**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| YDALE BANKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cv-2734-SHL-tmp |
| | ) | |
| GRADY PERRY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,**
**DENYING A CERTIFICATE OF APPEALABILITY,**
**CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH**
**AND**
**DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Amended § 2254 Petition"), filed by Petitioner, Ydale Banks, Tennessee Department of Correction prisoner number 315569, an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. (Am. § 2254 Pet., ECF No. 12.) Banks's Petition raises four issues—whether the evidence at trial was legally sufficient to sustain a conviction for premeditated murder or felony murder, whether the jury instructions violated the Due Process Clause, whether the trial court erred in allowing the victim's mother to testify at Banks's sentencing hearing, and whether trial counsel was constitutionally ineffective. (*Id.*) For the reasons stated below, the Court **DENIES** the Amended § 2254 Petition.

# I.    BACKGROUND

## A.    State Court Procedural History

On June 20, 1996, a grand jury in Shelby County, Tennessee, returned eight indictments against Banks and three co-defendants, Terrell Burgess, Kevin L. Hope and Beatrice Taylor.   All defendants were charged with the aggravated assault of Leslie B. Webber, Leslie B. Webber, Jr., and Dorothy Webber; especially aggravated robbery; especially aggravated burglary; and the especially aggravated kidnapping, killing during the perpetration of a kidnapping, conspiracy to kill during the perpetration of a kidnapping, first degree murder, and conspiracy to commit first degree murder of Dorothy Webber.   (Indictment, *State v. Banks*, Nos. 96-06382, -06383, -06384, -06385, -06386, -06387, -06388 (Shelby Cnty. Crim. Ct.), ECF No. 19-1 at PageID 252-71.)   The State subsequently filed notices of its intent to seek the death penalty and life imprisonment without the possibility of parole on the murder counts.   (Resp. of the State of Tenn. to Mot. of Def. to Require the State to Announce Its Intention to Seek the Death Penalty, ECF No. 19-1 at PageID 300-02; Not. of the State of Tenn. of Intent to Seek Penalty of Life Without Parole, ECF No. 19-1 at PageID 363.)

A jury trial on the charges against Banks commenced in the Shelby County Criminal Court on January 31, 2000.   On February 4, 2000, the jury found Banks guilty of three counts of aggravated assault, facilitation of especially aggravated robbery facilitation of especially aggravated burglary, three counts of especially aggravated kidnapping, felony murder and first degree murder, and conspiracy to commit first degree murder.   (Trial Tr. 697-99, ECF No. 19-12.)   A penalty-phase hearing on the murder counts began on February 4, 2000.   On February 5, 2000, the jury sentenced Banks to life imprisonment without the possibility of parole

on the two murder counts. (*Id.* at 818-19.) On March 17, 2000, the trial judge sentenced Banks to concurrent terms of six years for each of the three aggravated assaults, six years for the facilitation of especially aggravated burglary, twelve years for the facilitation of aggravated robbery, twenty-five years for the especially aggravated kidnapping, and twenty-five years for the conspiracy to commit first-degree murder. (Sentencing Hr'g Tr. 37, ECF No. 19-13.) Certain of the sentences were ordered to run concurrently with others while some were ordered to run consecutively. All sentences were to be served consecutively to the sentence of life without parole on the murder counts (*id. at 43*), for a total sentence of life without the possibility of parole plus thirty-seven years (*id.* at 48, 50-51, 86-87). Judgments were entered on March 17, 2000. (J., ECF No. 19-1 at PageID 383-91.)

The Tennessee Court of Criminal Appeals ("TCCA") reversed Banks's conviction for conspiracy to commit felony murder and otherwise affirmed. *State v. Banks,* No. W2000-00963-CCA-R3-CD, 2004 WL 1686868 (Tenn. Crim. App. July 28, 2004), *appeal denied* (Tenn. Jan. 24, 2005).[1] The TCCA summarized the evidence introduced at trial:

---

[1] The TCCA's summary of its resolution of the case is confusing. In the beginning of the opinion, the court states that "[w]e reverse the judgment of conviction of conspiracy to commit felony murder but otherwise affirm the judgment of the trial court." *Id.* at *1. In the conclusion, the court states that "[t]he defendant's convictions for premeditated first-degree murder and for conspiracy to commit that offense must be reversed. In all other respects, the judgments of the trial court are affirmed." *Id.* at *15. In addressing the sufficiency of the evidence, the court states that "[t]he majority of the panel of the court concludes that, taking the evidence presented in light most favorable to the state, sufficient evidence exists to allow a rational jury to conclude that the defendant was guilty beyond a reasonable doubt of first-degree premeditated murder." *Id.* at *8. The TCCA also affirmed Banks's conviction for felony murder, *id.* at *10, but stated that, "[a]lthough not specifically raised as an issue by defendant, we hold that the conviction of conspiracy to commit felony murder must be reversed and that charge dismissed." *Id.* In a long footnote, *id.* at *10 n.1, the author of the opinion explains why he

The convictions now under review emanated from events of August 12, 1995, which resulted in the death of Dorothy Webber, a 47-year-old nurse and beauty shop operator. The victim resided with her husband, Leslie B. Webber, Sr., and on the night of August 12, 1995, her son, Leslie B. Webber, Jr., was staying at her residence.

The victim's son testified that, on that night, he awakened to discover a female standing in the hallway. She held a revolver and told the younger Webber that he was "supposed to be asleep." A male intruder then entered the room, held a pistol to the younger Webber's head, and tied his hands with a vacuum cleaner cord. The intruders wore beige pants, white shirts, and white caps. The shirts and caps bore "Krispy Kreme Doughnut" logos. The younger Mr. Webber heard the voice of a third intruder, a male.

At one point, a male intruder placed a pillow over Mr. Webber's head, and Mr. Webber heard someone ransacking his room. He testified that the intruders asked where the money was, and Mr. Webber replied there was no money in the house. Mr. Webber heard the intruders addressing the elder Mr. Webber in the family den and telling him that the intruders were taking his wife, the victim, with them. When the younger Mr. Webber untied himself and went into the den, the intruders were gone, and he found his father handcuffed, dazed, and with a knot on his head. Both the victim and the victim's car, a Toyota Camry, were gone. The younger Mr. Webber testified that the intruders had entered the house by posing as Krispy Kreme employees selling or giving away doughnuts. A box of doughnuts was left behind in the den.

Approximately ten days later, the victim's body was found in a field in a rural area in Mississippi. Her hands had been cuffed behind her back, and duct tape had been wrapped around her head. The medical examiner testified that the victim had died between August 13 and 16; she had suffocated as a result of the tape across her mouth and nose.

Several weeks after the body was discovered, Memphis Police Officers interviewed the defendant about the home invasion and the death of the victim. In the resulting statement, the defendant admitted that he had been involved in the planning of a robbery or kidnapping. Three other men, a woman, and the defendant believed that a second son of the Webbers, Kevin Webber, was a drug

---

believes the evidence was insufficient to convict Banks of premeditated murder and conspiracy to commit premeditated murder.

It should not be surprising that Banks did not challenge his conviction for conspiracy to commit felony murder on direct appeal. The jury convicted him only of conspiracy to commit first-degree premeditated murder. *See supra* p. 2.

dealer who had amassed $300,000 in cash. The cabal of five decided three of them would gain entry to the Webber house by posing as Krispy Kreme employees. They purchased white shirts and caps and arranged to have Krispy Kreme logos affixed. The group talked about kidnapping the victim as a means of extracting a $300,000 ransom payment from Kevin Webber, should the money not be found in the elder Webbers' house. The defendant waited in a vehicle while three of his associates entered the house. After about fifteen minutes, the intruders emerged from the Webbers' garage in the victim's Camry; the victim was in the backseat. In his statement, the defendant stated that the group took the victim to a room in the Elvis Presley Inn. Later, they took her to a tire shop to which they had access; they kept her there throughout the night. On the following morning, they placed the victim inside a U-Haul truck, and the defendant drove the truck into Mississippi, where he backed it into a field. According to the defendant's statement, two of the other men removed the still-conscious victim from the truck and left her in the field. The victim was not "supposed to die."

Following guilty verdicts on the various charged offenses and faced with the state's quest for the death penalty, the lower court conducted a jury hearing on the issue of penalty on the murder convictions. The victim's mother testified that the loss of her daughter "meant everything to [her] because [she did not] have her any more, and ... [would not] see her anymore." She testified that the victim was "the love of the family and everybody loved her." Following this testimony, the state introduced photographs of the victim's body taken at the scene and in the morgue.

The defendant's sisters testified in his behalf. One testified that the defendant is a "valuable asset to [his] family" and is loved by them. She testified that the defendant had a six-year-old daughter, with whom he maintained a close relationship despite his incarceration. The other sister affirmed the family's affection for the defendant and testified that the defendant had always held a job and did so until he was incarcerated. She testified that he was skilled as a cook.

The mother of the defendant's daughter testified that the defendant worked very hard and aspired to be a chef. She testified that the defendant had a strong bond with his daughter and provided well for her financially. Despite the defendant's incarceration, he remained close to his daughter.

*Id.* at *1-3.

On October 6, 2005, Banks, through counsel, filed a petition in the Shelby County

Criminal Court pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§

40-30-101 to -122. (1st Post-Conviction Relief Pet., ECF No. 19-22 at PageID 1845-83.) Banks filed a supplemental petition on February 16, 2006, (Suppl. Pet. for Post-Conviction Relief, ECF No. 19-22 at PageID 1885-1904), and the State filed its response on April 6, 2006. (Resp. of the State of Tenn. to Pet'r's "1st Post Conviction Relief Pet.," ECF No. 19-22 at PageID 1906-07.) Banks filed additional amendments to his post-conviction petition on January 9, 2008 (Am. & Superseding Post-Conviction Relief Pet., ECF No. 19-22 at PageID 1908-27), October 14, 2008 (2d Am. & Superseding Post-Conviction Relief Pet., ECF No. 19-22 at PageID 1928-44), October 21, 2008 (3d Am. & Superseding Post-Conviction Relief Pet., ECF No. 19-22 at PageID 1945-56, ECF No. 19-23 at PageID 1957-65), and February 20, 2009 (4th Am. & Superseding Post-Conviction Relief Pet., ECF No. 19-23 at PageID 1966-78.) Hearings on the post-conviction petition were held on April 24, 2009 (Pet. for Post Conviction Relief Hr'g Tr., ECF No. 19-27) and August 6, 2009 (Pet. for Post-Conviction Relief Hr'g Tr., ECF No. 19-28). On June 30, 2010, the post-conviction court denied relief. (Order Denying Pet. for Post-Conviction Relief, ECF No. 19-23 at PageID 1981-2087.) The TCCA affirmed. *Banks v. State,* No. W2010-01610-CCA-R3-PC, 2012 WL 1067201 (Tenn. Crim. App. Mar. 27, 2012), *appeal denied* (Tenn. Sept. 18, 2012).

B.    **Federal Habeas Petition**

On September 19, 2013, Banks filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (§ 2254 Pet., ECF No. 1.) On December 4, 2013, Senior United States District Judge Jon Phipps McCalla directed Banks to file an amended petition on the official form within thirty days. (Order, ECF No. 7.) On March 18, 2014, the Clerk docketed Banks's Amended § 2254 Petition, which was accompanied by a Motion for Appointment of Counsel to

Amend Petition for Federal Writ of Habeas Corpus. (Am. § 2254 Pet., ECF No. 12; Mot. for Appointment of Counsel, ECF No. 13.) In an April 14, 2014 order, Judge McCalla accepted Banks's late-filed amendment, denied appointment of counsel, and directed Respondent, Michael Donahue, who was, at the time, the HCCF Warden, to file the state-court record and a response to the Amended § 2254 Petition within thirty days. (Order, ECF No. 14.)[2]

On May 6, 2014, Warden Donahue filed a Motion to Dismiss Time-Barred Petition, but failed to the state-court record as ordered. (Mot. to Dismiss, ECF No. 15.) On July 8, 2014, the Court denied the Motion to Dismiss without prejudice to the Warden's right to renew the motion upon the filing of the record. (Order, ECF No. 17.) Donahue was ordered, for the second time, to file the state-court record and a response to the Amended § 2254 Petition within twenty-eight days. (*Id.* at 3.)

On August 5, 2014, Warden Donahue filed his Second Motion to Dismiss the Time-Barred Petition, accompanied by most of the state-court record. (2d Mot. to Dismiss, ECF No. 18; Not. of Filing, ECF No. 19.)[3] On November 12, 2014, Banks filed his response to the Second Motion to Dismiss. (Pet'r's Resp. to Resp't's 2d Mot. to Dismiss, ECF No. 23.) In his Response, Banks argued that the statute of limitations should be equitably tolled because his post-conviction counsel failed to notify him that the Tennessee Supreme Court had denied permission to appeal the decision of the TCCA, which affirmed the denial of the post-conviction petition. (Pet'r's Mem. of Law in Supp. of Reply in Opp'n, ECF No. 23-1.) The Warden did not file a reply.

_____

[2] The matter was reassigned to the undersigned judge on May 27, 2014. (Admin. Order 2014-12, ECF No. 16.)

[3] The Warden failed to submit Banks's application for leave to appeal to the Tennessee Supreme Court, any response by the State to that application, and the order of the Tennessee Supreme Court denying the application.

On February 11, 2015, the Court found that an evidentiary hearing should be held on the question of equitable tolling. (Order at 3, ECF No. 26.) United States Magistrate Judge Tu M. Pham appointed counsel to represent Banks at the hearing. (Order, ECF No. 32.) The evidentiary hearing was held on October 29, 2015(Min. Entry, ECF No. 70.) and, on February 19, 2016, the Court found that Banks was entitled to equitable tolling and thus denied Respondent's Second Motion to Dismiss. (Order, ECF No. 72.)

The February 19, 2016 order also substituted current HCCF Warden Grady Perry as respondent. (*Id.* at 1 n.1.) The Court directed Warden Perry to file a response to the Amended § 2254 Petition, the remainder of the state-court record, and an amended index to the record. (*Id.* at 24.) On February 17, 2016, Perry filed a motion seeking an extension of time, until March 29, 2016, to comply with the order, and the Court denied his motion. (Resp't's Mot. for Extension of Time, ECF No. 73; Order, ECF No. 74.) In an amended order entered on February 22, 2016, the Court explained that the denial was due to Respondent's failure to provide a reason for seeking the extension. (Am. Order, ECF No. 75.)

On March 4, 2016, Warden Perry filed the remainder of the state-court record. (2d Not. of Filing, ECF No. 76.) On March 22, 2016, Perry filed his Answer to Petition for Writ of Habeas Corpus ("Answer"). (Answer, ECF No. 77.)[4] On May 19, 2016, Banks, through counsel, filed his Reply to Answer of Respondent ("Reply"). (Reply, ECF No. 80.)[5] In his Reply, Banks argued, *inter alia*, that the Answer should be dismissed because it was untimely. (*Id.* at 1-2.) On

---

[4] Perry did not comply with the order to file an amended index to the record and has not explained his failure to do so. Given the length of time this matter has been pending, the Court will decide the matter without taking the additional time required to obtain cooperation from the Attorney General.

[5] This filing was misdocketed as a response to Banks's motion for an extension of time.

May 20, 2016, the Warden filed a motion seeking leave to file a sur-reply, in which he asked the Court to accept his late-filed Answer. (Resp't's Mot. to File Sur-Reply, ECF No. 81; Sur-Reply, ECF No. 81-1.) Perry explained that he had miscalculated the due date of his Answer. (Sur-Reply at 1, ECF No. 81-1.) The Court issued an order on June 7, 2016, that granted leave to file a sur-reply and accepted the late-filed Answer.

## II.   PETITIONER'S FEDERAL HABEAS CLAIMS

In his Amended § 2254 Petition, Banks raises the following claims:

1.   "Where the State fails to present evidence of a deliberate plan to kill there is constitutionally insufficient evidence to sustain a conviction for premeditated murder or felony murder the resulting convictions violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution" (Am. § 2254 Pet. 6, ECF No. 12);

2.   "Whether the petitioner's rights under the Fifth and Fourteenth Amendment [sic] of the United States Constitution were violated where the ailing instructions by itself so infected the entire trial that the resulting convictions violated due process" (*id.* at 7);

3.   "The trial court violated Petitioner's constitutional rights by allowing the victims' [sic] mother to testify at the sentencing phase of his trial, where he was prejudiced by the inflammatory victim-impact testimony" (*id.* at 9); and

4.   "The Petitioner received Ineffective Assistance of Counsel under the Sixth Amendment of the United States . . . . (*id.* at 10).

9

## III.    THE LEGAL STANDARD

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").   A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).

### A.    Waiver and Procedural Default

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts pursuant to 28 U.S.C. § 2254(b) and (c).   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).   The petitioner must "fairly present"[6] each claim to all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999).   Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court to "be deemed to have exhausted all available state remedies."   *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (internal quotation marks omitted).   To avoid procedural default, a habeas petitioner in Tennessee must present his federal claims to the TCCA.   *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004).

---

[6] For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted).   Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks omitted). However, "we may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

If a claim has never been presented to the state courts, but a state court remedy is no longer available (*e.g.*, when an applicable statute of limitations bars a claim), the claim is technically exhausted, but procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *see also Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine), *partial abrogation on other grounds recognized by Peoples,* 734 F.3d at 511-12.

If a petitioner's claim is procedurally defaulted, a petitioner must show "cause" to excuse his failure to present the claim fairly and "actual prejudice" stemming from the constitutional violation, *Coleman*, 501 U.S. at 750, or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice, *Schlup v. Delo*, 513 U.S. 298, 322 (1995). The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the

conviction of a person who is actually innocent of the crime. *Id.* at 321; *see House v. Bell*, 547 U.S. 518, 536-39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

### B. Merits Review

Where a claim has been adjudicated on the merits in state court, the writ is only granted if the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.* at 181-82, 185.

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).[7] An "unreasonable application" of federal law occurs when the

---

[7] The "contrary to" standard does not require citation of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. The writ may not issue merely because the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

As for challenges under §2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, . . . [t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" *Titlow v. Burt*, 134 S. Ct. 10, 15 (2013) (quoting 28 U.S.C. § 2254(e)(1)). A state court factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination.").[8] The Supreme Court has described this standard as "demanding but not

---

[8] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was "'unreasonable,'" or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing

insatiable" and has emphasized that "deference does not by definition preclude relief." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (internal quotation marks and alteration omitted).

## IV.    ANALYSIS OF PETITIONER'S CLAIMS

### A.    The Sufficiency of the Evidence (Claim 1)

In Claim 1, Banks argues that the evidence is insufficient to support his convictions for first degree murder and felony murder because "the State fail[ed] to present evidence of a deliberate plan to kill." (Am. § 2254 Pet. 6, ECF No. 12.)    Specifically, Banks argues that Anthony Perry's testimony was inconsistent and false, the physical evidence against him failed to support these convictions, the witnesses all lacked credibility for different reasons, the evidence from the medical examiner as to cause of death does not support these convictions, and the evidence is unclear as to whether the death occurred during the kidnapping. (*Id.*)    Banks raised a challenge to the sufficiency of the evidence on direct appeal. (Br. of Appellant at 1, 18-19, ECF No. 19-18.) Respondent, however, argues that the sufficiency of the evidence claim in the Amended § 2254 Petition is different from the claim that was presented on direct appeal.    Because there is no longer any means for exhausting the new aspects of Claim 1, the Warden contends that portions of the claim are barred by procedural default. (Answer at 18-19, ECF No. 77.)

This argument is well-taken. On direct appeal, Banks argued that the State failed to introduce any evidence of a plan to kill Dorothy Webber. (Br. of Appellant at 10-11, ECF No.

_____

evidence." *Wood*, 558 U.S. at 299. The Court ultimately found it unnecessary to reach that issue, and left it open "for another day". *Id.* at 300-01, 303 (citing *Rice*, 546 U.S. at 339, in which the Court recognized that it is unsettled whether there are some factual disputes to which § 2254(e)(1) is inapplicable). In *Titlow*, 134 S. Ct. at 15, the Supreme Court applied § 2254(e)(1)'s "clear and convincing" standard but cautioned that "[w]e have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), and we need not do so here."

19-18.)  Banks challenged his conviction for felony murder on the ground that the State had not shown that "the killing was closely connected to the alleged kidnapping, and . . . was not a separate, distinct, and independent event."  (*Id.* at 19.)  Banks did not challenge the credibility of the State's witnesses before the TCCA, and he did not argue that the physical evidence and the medical examiner's testimony were insufficient to determine the cause of the victim's death. Therefore, Banks has not exhausted these aspects of Claim 1 in state court and, as no means of doing so exist, they are barred by procedural default.

Banks did, however, exhaust a challenge to the sufficiency of the evidence to establish the element of premeditation required for a first degree murder conviction and a challenge to the felony murder conviction based on a lack of evidence that Dorothy Webber's death occurred during the perpetration of a kidnapping.  The TCCA rejected these two claims on the merits, reasoning as follows:

(a)  Premeditated Murder.

. . .

The defendant argues that the premeditated murder conviction is groundless because the defendant's pretrial statement, which was crucial in inculpating the defendant in the crimes, shows that the victim's death was unintended and that she was alive and conscious when the defendant last saw her.  In our review of the evidence in the light most favorable to the state, we are not bound by the self-serving elements of the defendant's statements, and neither was the jury.  In *Espitia v. State*, 199 Tenn. 696, 288 S.W.2d 731 (1956), our supreme court said, "It is for the jury to say what weight shall be given to the several parts of the [pretrial] statement, for they may well believe that part which charges the prisoner, and reject that which tends to exculpate him."  *Id.* at 699, 288 S.W.2d at 733 (emphasis removed).

The majority of the panel of the court concludes that, taking the evidence presented in light most favorable to the state, sufficient evidence exists to allow a rational jury to conclude that the defendant was guilty beyond a reasonable doubt of first-degree premeditated murder.  The defendant confessed that he was involved

in the kidnapping and death of the victim. He admitted having detailed discussions with others concerning the plan to kidnap the victim for ransom. The plan took a week to put in motion and involved the defendant soliciting others to help carry out the kidnapping. The defendant "cased" the victim's home on at least three occasions prior to the kidnapping. The plan included obtaining hats, shirts, and six dozen donuts so as to pose as Krispy Kreme employees. A female was involved to make the entry even more plausible, while allowing the utmost of surprise to the unsuspecting victim. The defendant was involved in decisions as to where the victim would be housed. First, the victim was placed in the tire shop, then in the hotel, then the back of a U-Haul van, and ultimately, in a remote field in Mississippi. The defendant did not go into the victim's home but admitted, "I was to supervise the operation." All evidence supports that the defendant did, in fact, supervise the entire operation from seizure to death.

The medical evidence clearly established the cause of death—suffocation. The trial court accepted the testimony of Dr. O.C. Smith as an expert in the field of Forensic Pathology. Dr. Smith testified that the cause of death was suffocation, which rendered the victim unconscious within two minutes and resulted in death within another two minutes. He opined that gray duct tape had been applied around the head and neck of the victim in such a fashion as to obstruct the victim's ability to breath, resulting in her death.

. . .

A rational jury, from the evidence present, had ample proof to conclude that the duct tape, as applied to this victim, was done so willfully, deliberately, and intentionally to cause the victim's suffocation and death. The defendant was present when the tape was applied by a co-defendant and, because of his overwhelming participation in this crime, the defendant was criminally responsible for the conduct of another.

It is the jury's prerogative to reject the defendant's explanation of how the victim's death occurred or where it occurred. ... The jury was free to reject any notion from this defendant that the victim was carried to a remote field in Mississippi, handcuffed behind her back and duct taped around her neck and head, for the purpose of being found and returned to her family alive.

(b)      Felony Murder.

For purposes of our analysis of felony murder as that offense was alleged in the indictment in the present case, kidnapping is "false imprisonment ... [u]nder circumstances exposing the [victim] to substantial risk of bodily injury." Tenn. Code Ann. § 39-13-303(a)(2) (2003). False imprisonment is committed by a

person who "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id.* § 39-13-302(a) (2003).

       The defendant urges this court to hold that the victim's killing was not in perpetration of the kidnapping. We disagree. Indeed, a determination that an accused committed felony murder must be grounded upon a finding that the killing and the predicate felony were "closely connected in time, place, and causation, and continuity of action." *State v. Pierce*, 23 S.W.3d 289, 295 (Tenn. 2000). In the present case, however, the perpetrators were still unlawfully confining the victim, thus interfering with her liberty, when she was killed. We hold that the homicide was committed in the perpetration of kidnapping.

*State v. Banks*, 2004 WL 1686868, at *6-10 (footnote omitted).

In *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), the Supreme Court held that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." This standard requires a federal district court to examine the evidence in the light most favorable to the State. *Id.* at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The State is not required "to rule out every hypothesis except that of guilt beyond a reasonable doubt . . . ." *Id.*

       "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). Moreover, credibility determinations are reserved for the trier of fact and are "generally beyond the scope of habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 918 (6th Cir. 2012) (internal

quotation marks and alteration omitted). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos*, 132 S. Ct. at 4 (internal quotation marks and citation omitted).

It is unclear whether Banks contends that the decision of the TCCA on Claim 1 was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or whether it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Therefore, the Court addresses both arguments.

As for the first, Banks has not established that the decision of the TCCA was contrary to *Jackson v. Virginia*. Although the TCCA's opinion does not cite *Jackson*, it recites the applicable legal standard and cites Tennessee decisions applying *Jackson*. *State v. Banks*, 2004 WL 1686868, at *6-7. The TCCA's opinion is thus "a run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case" and, therefore, it "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams v. Taylor*, 529 U.S. at 406.

Banks also has failed to demonstrate that the decision of the TCCA was an unreasonable application of *Jackson v. Virginia* or that it was based on an objectively unreasonable factual determination. The TCCA discussed at length the evidence that led it to conclude that a reasonable jury could find that the murder of Dorothy Webber was premeditated. *State v. Banks*, 2004 WL 1686868, at *9-10. Banks does not acknowledge the TCCA's opinion or address this evidence. Banks also fails to address the TCCA's conclusion that, because Dorothy Webber had

18

not been released by the kidnappers, her death was committed in the perpetration of a kidnapping. *Id.* at *10.

Claim 1 is without merit and is **DISMISSED**.

**B.      Jury Instructions (Claim 2)**

In Claim 2, Banks alleges that his "rights under the Fifth and Fourteenth Amendment of the United States Constitutions [sic] were violated where the ailing instructions by itself so infected the entire trial that the resulting convictions violated due process."   (Am. § 2254 Pet. 7, ECF No. 12.)   Specifically, Banks complains that

> [t]he trial judge submitted unclear instructions to the jury that were confusing and identified errors that were corrected and resubmitted to the jury; the trial judge made many handwritten interlineations to the typed set of instructions that were replete with handwritten notes that confused the jury and some sentences run on top of each another and were simply illegible; the trial judge improperly expanded the definition of "knowingly" beyond that in Tennessee Code Annotated § 39-11-106; and that the use of the term "moral certainty" portion of the reasonable doubt lowered the standard of proof to clear and convincing evidence and improperly shifted the focus of the jury to the subjective morality of the defendant rather than the required legal proof.[]

(*Id.*)

On direct appeal, Banks challenged the jury instruction that defined the term "knowingly," arguing that the trial court erred when it instructed the jury regarding the "knowing" element of second-degree murder, which is a "result of conduct" crime.   (Br. of Appellant 22, ECF No. 19-18.)   That instruction addressed the requisite mental state to convict a defendant of second-degree murder, reckless homicide, and criminally negligent homicide.   (*Id.*)   The TCCA denied relief for three reasons.   First, the TCCA held that, under Tennessee law, Banks had waived this claim when he failed to include it in his motion for new trial.   *State v. Banks*, 2004

WL 1686868, at *14.   In the alternative, the court also found that, to the extent the argument goes

to the inclusion of "knowing" in the instruction on second degree murder, the criticism was moot,

given that the jury convicted Banks of first degree murder.   *Id.*   Finally, the TCCA held that the

alleged error was harmless.   *Id.*

In his answer, Warden Perry appears to argue that the TCCA decided the case on an

independent and adequate state ground and, therefore, the claim is barred by procedural default.

(*See* Answer 20, ECF No. 77.)   The Court agrees.   Rule 3(e) of the Tennessee Rules of Appellate

Procedure provides, in pertinent part, that,

> in all cases tried by a jury, no issue presented for review shall be predicated upon
> error in the admission or exclusion of evidence, jury instructions granted or
> refused, misconduct of jurors, parties or counsel, or other action committed or
> occurring during the trial of the case, or other ground upon which a new trial is
> sought, unless the same was specifically stated in a motion for a new trial;
> otherwise such issues will be treated as waived.

Banks did not include a challenge to the jury instructions in his written motion for a new trial or

during the argument on that motion.   (*See* Mot. for New Trial, ECF No. 19-1 at PageID 392-94;

03/17/2000 Hr'g Tr. 59-76, ECF No. 19-13.)   Therefore, the TCCA held that the claim had been

waived.   Rule 3(e) of the Tennessee Rules of Appellate Procedure appears to be firmly

established and regularly followed.   *See, e.g., State v. Caldwell*, 671 S.W.3d 459, 465 (Tenn.

1984); *State v. Williams*, C.C.A. No. 1146, 1988 WL 4597, at *2 (Tenn. Crim. App. Jan. 25, 1988)

(collecting cases); *State v. Glasgow*, No. 87-135-III, 1988 WL 3620, at *1 (Tenn. Crim. App.

Jan. 20, 1988).   Therefore, this sub-claim is barred by procedural default.

Even if procedural default did not apply, Banks fails to address the TCCA's alternative

holdings.   "To warrant habeas relief, jury instructions must not only have been erroneous, but

also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir. 1997) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly." *Id.* Here, the jury was instructed to first consider whether Banks was guilty of the offense charged in the indictment and to consider lesser-included offenses only if he had been acquitted of the charged offense. (Jury Charge at 78-83, ECF No. 19-17.) Because the jury convicted Banks of felony murder and first-degree murder, it never had to consider whether he might be guilty of second-degree murder. Therefore, the TCCA's conclusions that the issue was moot and any error was harmless is not objectively unreasonable.

Warden Perry's Answer fails to address Banks's remaining sub-claims. (*See* Answer 19-20, ECF No. 77.) Moreover, the Court notes that this is the first time that Banks challenges the trial court's instruction on reasonable doubt, which means that the claim has not been exhausted. However, Warden Perry has not raised the affirmative defenses of failure to exhaust and procedural default. *Whiting v. Burt*, 395 F.3d 602, 610 (6th Cir. 2005). Under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." Because Respondent has not raised an affirmative defense to the claim and no state court has had the opportunity to address Banks's challenge to the reasonable doubt instruction, the claim will be reviewed *de novo*.

The jury was instructed that:

[t]he State has the entire burden of proving guilt of the defendant beyond a reasonable doubt and to a moral certainty, and this burden never shifts but remains upon the State throughout the trial of the case. The defendant is not required to prove his innocence. The State must have proven beyond a reasonable doubt and to a moral certainty all of the elements of the crime charged and that it was committed before the filing and returning of the indictment in this case.

(Jury Charge at 11-12, ECF No. 19-17; *see also id.* at 53-54 (presumption of innocence).)

Reasonable doubt was defined as follows:

> Reasonable doubt is that doubt engendered by an investigation of all of the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. You should not lightly contemplate the dismissal of a doubt that might prove reasonable even if you have reservations about its application.
>
> Reasonable doubt does not mean the doubt that may arise from mere possibility nor does it mean a capricious or imaginary doubt or fantasy. In this respect absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required as to every proposition of proof necessary to establish the offense.
>
> In making this determination of moral certainty you should endeavor to go so far and to such an extent within the bounds of logic, rationality, reason and human capacity as to assure that the ideal of certainty as it pertains to moral certainty is approached as nearly as possible.

(*Id.* at 54-55.)

Banks has failed to establish that the trial court's reasonable doubt instruction was unconstitutional. In *Victor v. Nebraska*, 511 U.S. 1, 14 (1994), the United States Supreme Court held that use of the term "moral certainty" does not render a "reasonable doubt" instruction unconstitutional and that the phrase "moral certainty" is constitutionally permissible where the rest of the instruction "lends content to the phrase" and indicates the government's proper burden of proof. Proof to a "moral certainty" has been equated to proof "beyond a reasonable doubt." *Id.* at 12. The Sixth Circuit, analyzing *Victor*, has upheld the constitutionality of a similar reasonable

doubt jury instruction. *Austin*, 126 F.3d at 846-47; *see also United States v. Perry*, 438 F.3d 642, 650-51 (6th Cir. 2006) ("references to a 'moral certainty' do not mislead a reasonably jury").

Because the reasonable doubt instruction is not unconstitutional, it is unnecessary to address whether any error rendered the trial fundamentally unfair. This sub-claim is without merit.

The Warden also has not addressed Banks's claim about the clarity of the written jury instructions. On direct appeal Banks argued that the trial court erred by giving illegible and confusing instructions. (Br. of Appellant 20-21, ECF No. 19-18.)[9] The TCCA, citing Tennessee Rule of Appellate Procedure 13(e), held that Banks had waived the issue because it was not included in his motion for a new trial. *State v. Banks*, 2004 WL 1686868, at *14. Ordinarily, then, this sub-claim would be barred by procedural default. However, Banks did present his challenge to the written jury instructions during the post-conviction proceeding. After the post-conviction court denied relief, Banks raised the issue in his brief to the TCCA on the post-conviction appeal. (Br. of Appellant 2, 16-20, ECF No. 19-29.) The TCCA denied relief on the merits after first describing the applicable Tennessee law on this issue and then finding that the jury instructions, which were read aloud in addition to being provided on paper, satisfied that Tennessee law because they were "legible and not 'meaningless.'" *Banks v. State*, 2012 WL 1067201, at *6-8.

Because the TCCA addressed the merits of this sub-claim on the post-conviction appeal, it was properly exhausted. However, Banks has not satisfied his burden of demonstrating that the TCCA's decision was contrary to, or an unreasonable application of, clearly established federal

---

[9] The written copy of the jury instructions is found at ECF No. 19-4.

law or that it rested on an objectively unreasonable factual determination. Banks has cited no

decision of the United States Supreme Court addressing the constitutional standards for written

jury instructions. Banks also has not argued that there is a reasonable likelihood that the jury

applied the instructions improperly. *See supra* p. 21.[10] This sub-claim is without merit.

For the foregoing reasons, Claim 2 is without merit and is **DISMISSED**.

### C.    Victim-Impact Testimony (Claim 3)

In Claim 3, Banks argues that the trial court violated his constitutional rights by allowing

Dorothy Webber's mother to give inflammatory victim-impact testimony at the sentencing phase

of his trial. (Am. § 2254 Pet. 9, ECF No. 12.) Banks elaborates that

> [o]nly evidence of the emotional impact on the family was introduced; that all of
> the prosecution's questions were focused on eliciting emotional responses shifting
> the jury's concentration from a reasoned, balanced viewpoint towards sentencing to
> emotional and unfairly prejudicial state of mind, the inflammatory victim-impact
> testimony had a substantial and injurious effect on the penalty phase verdict.

(*Id.*)

In his Answer, Warden Perry first argues that this claim is procedurally defaulted because

Banks's brief to the TCCA on direct appeal "rested almost entirely on state law and did not allege

any violation of petitioner's constitutional rights." (Answer 21, ECF No. 77.) The Court

disagrees. In his brief on direct appeal, Banks referred to the Eighth and Fourteenth Amendments

---

[10] In his Reply, Banks argues that his jury instructions were "erroneous, unclear, illogical
and confusing to the jury, which resulted in substantial prejudice to Petitioner's fundamental right
to a fair trial." (Reply 3, ECF No. 80; *see also id.* at 3-5.) The Reply fails to address the TCCA's
treatment of this issue on the post-conviction appeal. This portion of the Reply also includes
several additional challenges to the jury instructions that were presented to the state courts only as
ineffective assistance claims, such as the failure to charge lesser-included offenses on some
counts. (*See id.* at 4.) A reply to an Answer is not a proper procedural vehicle in which to raise
new claims.

to the United States Constitution and cited *Payne v. Tennessee*, 501 U.S. 808 (1991), and *State v. Nesbit*, 978 S.W.2d 872, 887-89 (1998), the leading Tennessee case applying *Payne*. (Br. of Appellant 12-15, ECF No. 19-18.) The brief concluded that the trial judge failed to consider whether the Due Process Clause precluded the specific victim impact evidence introduced by Dorothy Webber's mother. (*Id.* at 15.) These references are more than sufficient to alert the state court to the presence of a federal constitutional claim. *See Pudelski v. Wilson*, 576 F.3d 595, 605-06 (6th Cir. 2009); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds by English v. Berghuis*, 529 F. App'x 734, 744-45 (6th Cir. 2013).

The Warden argues, in the alternative, that the TCCA's decision "was not contrary to, and did not involve an unreasonable application of, clearly established federal law and was not based upon an unreasonable determination of the facts in light of the evidence before the state court." (Answer 23, ECF No. 77.) The TCCA denied relief on the merits, reasoning as follows:

> Neither the United States Constitution nor the Tennessee Constitution prohibit the use of victim impact testimony to serve as a reminder to the jury in a capital case that "the victim is an individual whose death represents a unique loss to society and in particular to his family." *State v. Nesbit*, 978 S.W.2d 872, 889 (Tenn. 1998) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S. Ct. 2597, 2608, 115 L. Ed. 2d 720 (1991)). Accordingly, victim impact evidence may be presented in a sentencing procedure when authorized by state law, *id.* at 890, and our Code section 39-13-204(c) authorizes the use of victim impact testimony in a first-degree murder jury sentencing procedure

> . . . .

> "[V]ictim impact evidence," however, "which threatens to render the trial fundamentally unfair or which poses a danger of unfair prejudice is not appropriate and should be excluded by the trial judge." *Nesbit,* 978 S.W.2d at 891. Furthermore,

To enable the trial court to adequately supervise the admission of victim impact proof, we conclude that the State must notify the trial court of its intent to produce victim impact evidence. Upon receiving notification, the trial court must hold a hearing outside the presence of the jury to determine the admissibility of the evidence. The victim impact evidence should not be admitted until the trial court determines that evidence of one or more aggravating circumstances is already present in the record.

Generally, victim impact evidence should be limited to information designed to show those unique characteristics which provide a brief glimpse into the life of the individual who has been killed, the contemporaneous and prospective circumstances surrounding the individual's death, and how those circumstances financially, emotionally, psychologically or physically impacted upon members of the victim's immediate family. Of these types of proof, evidence regarding the emotional impact of the murder on the victim's family should be most closely scrutinized because it poses the greatest threat to due process and risk of undue prejudice, particularly if no proof is offered on the other types of victim impact. However, there is no bright-line test, and the admissibility of specific types of victim impact evidence must be determined on a case-by-case basis.

*Id.* (citations and footnote omitted).

. . . .

As to the trial court's substantive ruling on the use of testimony of the mother of the victim, we hold that the testimony fit within the boundaries erected by *Nesbit*. Although the testimony articulated the emotional impact upon the victim's immediate family and such evidence must be closely scrutinized so as to avoid undue prejudice, *see Nesbit*, 978 S.W.2d at 891, and although no other type of victim impact evidence was presented, we hold that the testimony presented was narrow and within proper bounds. We discern no error in this case in allowing the state to present the victim's mother to testify as to the impact of the victim's death.

*State v. Banks*, 2004 WL 1686868, at *12-13.

The TCCA's decision applied the correct legal rule to the facts of a prisoner's case and, therefore, the "contrary to" clause of § 2254(d)(1) is inapplicable. As the Supreme Court held in *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), "[v]ictim impact evidence is simply another form

or method of informing the sentencing authority about the specific harm caused by the crime" and serves entirely legitimate purposes.[11]

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Payne*, 501 U.S. at 827. The Supreme Court recognized that relief under the Due Process Clause would be appropriate if victim impact evidence introduced in the sentencing phase of a criminal case "is so unduly prejudicial that it renders the trial fundamentally unfair." *Id.* at 825. This evidence does not fall into the category of being unduly prejudicial.

Banks has failed to demonstrate that the TCCA's decision was an unreasonable application of *Payne* or that it was based on an objectively unreasonable factual finding. During the sentencing phase of the trial, Jessie Traylor, Dorothy Webber's mother, testified that the death of her daughter "meant everything to me because I don't have her anymore, and she's gone and I won't see her any more. And she's all to me because she's all I had, and she mean everything to the family and her church, her job, and it's just a loss." (Trial Tr. 752, ECF No. 19-12.) Dorothy Webber left behind four sons and a husband, all of whom loved her. (*Id.*) According to Traylor, Dorothy Webber was "the love of the family." (*Id.*) Traylor thinks about the loss of her daughter "[a]ll the time." (*Id.* at 752-53.) Traylor's victim impact testimony amounted to less

---

[11] With *Payne*, the Supreme Court overruled its prior decision in *Booth v. Maryland*, 482 U.S. 496 (1987), which held that victim impact evidence leads to the arbitrary imposition of the death penalty.

than three full pages of the trial transcript.   Banks fails to explain why the TCCA's holding that

this testimony was "narrow and within proper bounds" was an unreasonable application of *Payne*.

Claim 3 is without merit and is **DISMISSED**.

### D.        Ineffective Assistance of Counsel (Claim 4)

In Claim 4, Banks argues that his trial and appellate counsel rendered ineffective

assistance, in violation of the Sixth Amendment.   (Am. § 2254 Pet. 10, ECF No. 12.)

Specifically, Banks complains that his attorneys failed:

> (1) to object and preserve the record regarding the trial judge's sleeping and general
> demeanor during the suppression hearing; (2) to obtain written ruling from the trial
> court on petitioner's motion to suppress; (3) to properly preserve his objections to
> the late night jury deliberations and raise the issue on appeal; (4) to review the jury
> instructions after the court made []delineations and additions and challenge the
> form of the jury instructions in the motion for new trial; (5) to object to improper
> statements made by the prosecutor in closing argument; (6) to challenge the trial
> court's failure to properly charge certain lessor-included offenses and raise the
> issue on appeal; (7) to object to the "moral certainty" portion of the reasonable
> doubt instruction submitted to the jury; (8) had trial counsel investigated the facts
> and circumstances of his case in relation to the law, both factually and legally, then
> the petitioner's trial would not resulted in the manner of the petitioner being
> convicted of both premeditated murder and felony murder.

(*Id.*)

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth

Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466

U.S. 668 (1984).   Those standards require a showing that "counsel's performance was deficient"

and that "the deficient performance prejudiced the defense."   *Id.* at 687.   "The benchmark for

judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

functioning of the adversarial process that the trial cannot be relied on as having produced a just

result."   *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[12] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [*Strickland*, 466 U.S.] at 693. Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Id.*, at 687." *Richter*, 562 U.S. at 104 (parallel citations omitted); *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and

---

[12] If a reviewing court finds an absence of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.* at 697.

interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690.

*Richter*, 562 U.S. at 105.

The deference to be accorded a state-court decision is magnified when reviewing an ineffective assistance claim under 28 U.S.C. § 2254(d):

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* Banks raised a claim of ineffective assistance of counsel during the post-conviction proceeding.

### 1. Counsel's Failure to Preserve the Record Concerning the Trial Judge's Sleeping and Demeanor

Banks complains that his attorney failed to preserve the record concerning the trial judge's sleeping and demeanor.[13] *See supra* p. 28. Banks raised this issue in his brief to the TCCA on the post-conviction appeal. (Br. of Appellant 2, 22-23, ECF No. 19-29.) The TCCA denied relief on the merits, reasoning as follows:

---

[13] The Petitioner's argument regarding demeanor simply refers to his argument regarding the Judge sleeping.

With regard to this issue, the post-conviction court found that there was testimony at the evidentiary hearing from the petitioner, counsel, and counsel's assistant that the trial judge fell asleep for "an extremely brief period of time" during the cross-examination of the petitioner but that such testimony was controverted by the prosecutor, who testified that he did not remember such incident. Nevertheless, the post-conviction court observed that the trial judge appeared to have acknowledged that his attention briefly lapsed during a portion of the suppression hearing. The court noted that both counsel and the court took appropriate steps to mitigate any potential prejudice to the petitioner and, even though the better course may have been for counsel to record the incident for the record, the petitioner did not demonstrate that the trial court's determination on the motion to suppress or the appellate court's decision on the issue would have been different.

After review, we conclude that the record supports the post-conviction court's determination. As noted by the post-conviction court, the trial judge reviewed the transcript from the hearing, including the "10, 15 seconds ... that [the judge] lapsed on," prior to issuing his ruling and allayed counsel's concerns about judging the petitioner's demeanor as a witness. Moreover, this court reviewed the entire testimony presented at the suppression hearing and upheld the trial court's denial of the petitioner's motion to suppress. *See Ydale Banks*, 2004 WL 1686868, at *3-6. Therefore, even if counsel was deficient for failing to object and preserve the issue for the record, the fact that this court reviewed the testimony from the suppression hearing and affirmed the trial court's denial of the motion to suppress precludes the petitioner from establishing that he was prejudiced by any inaction by counsel.

*Banks v. State*, 2012 WL 1067201, at *9-10.

The TCCA's decision was not "contrary to" *Strickland v. Washington*. The TCCA applied the correct legal rule from *Strickland* to the facts of Banks's case and, therefore, the "contrary to" clause is inapplicable. *See Banks v. State*, 2012 WL 1067201, at *9.

Banks also fails to satisfy his burden of demonstrating that the TCCA's ruling was an unreasonable application of *Strickland* or was based on an objectively unreasonable factual

finding.[14]   Notably, Banks does not take issue with the state courts' determination that, even in his version of events, the time during which the trial judge slept during the suppression hearing was "extremely brief."   *Id.*   Banks also does not question whether the trial judge read the transcript before ruling on the suppression motion, as he had assured the parties he would.

Moreover, given the TCCA's factual findings and its ruling on the motion to suppress, Banks cannot establish that he suffered prejudice by the trial judge's brief lapse of attention. Banks did challenge the trial court's ruling on the suppression motion on direct appeal.   The TCCA made the following factual findings:

> [T]he state, as the prevailing party below, benefits from the strongest legitimate view of the evidence, as well as all reasonable inferences that may be drawn therefrom.   Indulging the state this benefit, the record supports the denial of the motion to suppress.   Lieutenant, then-Sergeant Woods detailed an orderly process in which the officers advised the defendant of his *Miranda* rights, procured a written waiver of his rights, obtained an informal statement, and procured the defendant's adoption of a formal transcript of the statement.   The officer's testimony that the defendant waived his *Miranda* rights was not factually challenged.   Thus, the state carried its burden of demonstrating that the high-school-educated defendant voluntarily and understandingly waived his rights. Furthermore, the officer affirmatively contradicted the defendant's claim that his will to remain silent had been overborne by promises of leniency, physical discomfort, and threats that the defendant's sister would lose her job unless the defendant confessed.   Indulging the state as the prevailing party below the strongest legitimate view of the evidence, the defendant's left hand was not handcuffed during the interview, and he was not told that his sister would lose her job lest he confessed.   Moreover, the officer did not discuss punishment with the defendant, nor did the defendant request the assistance of counsel during the interview process.   In short, the record supports the trial court's determination that no constitutional issues prevented the admission of the defendant's pretrial statement.

---

[14] In his Reply, Banks argues, at length, that his "right to a fair trial was violated by the trial court's inattentiveness and sleeping during the hearing on the Motion to Suppress Petitioner's statement."   (Reply 5, ECF No. 80; *see also id.* at 5-6.)   Banks overlooks the fact that this issue was raised as an ineffective-assistance claim, not as a standalone constitutional violation.   Banks also fails to address the TCCA's opinion on the ineffective-assistance claim.

*State v. Banks*, 2004 WL 1686868, at *6 (citations omitted).   The TCCA denied relief in a lengthy and detailed order, *id.* at *3-6, which Banks has not challenged in his federal habeas petition.   No prejudice has been established.

This sub-claim is without merit.

### 2.    Trial Counsel's Failure to Obtain a Written Ruling on the Motion to Suppress

Banks also claims that his attorney was ineffective for failing to ensure that the trial judge issued a written ruling on the motion to suppress.   *See supra* p. 28.   This sub-claim was raised in Banks's brief to the TCCA on the post-conviction appeal.   (Br. of Appellant 2, 35, ECF No. 19-29.)   The TCCA denied relief on the merits, reasoning as follows:

> As to this issue, the post-conviction court found that counsel was not ineffective in failing to obtain a final written ruling on the motion to suppress.   The court noted that counsel testified that he received pretrial notice that the motion was denied even if he did not request a written order.   The court also noted that the appellate court, after a full review, concluded that the evidence supported the trial court's determination that the petitioner's confession was freely and voluntarily given.   Accordingly, the court found that, even if counsel was deficient in failing to request a written order, the petitioner failed to demonstrate any prejudice because "it is unlikely that either the trial court or the appellate court would have reached a different conclusion."

> We conclude that the record fully supports the post-conviction court's determination.   As noted previously, this court thoroughly reviewed the denial of the motion to suppress on direct appeal and affirmed the denial.   Therefore, the petitioner has not and cannot show that he was prejudiced by the absence of such written order.

*Banks v. State*, 2012 WL 1067201, at *10.

Once again, Banks cannot establish that the TCCA's decision was an unreasonable application of *Strickland* or was based on an objectively unreasonable factual finding. This sub-claim is without merit.

### 3. Counsel's Failure to Preserve the Objection to the Late-Night Jury Deliberations and to Raise the Issue on Appeal

Banks complains that his attorney failed to preserve his objections to the late-night jury deliberations and to raise the issue on appeal. *See supra* p. 28. Banks raised this issue in his brief to the TCCA on the post-conviction appeal. (Br. of Appellant 2, 24-29, ECF No. 19-29.) The TCCA denied relief on the merits, reasoning as follows:

> With regard to this issue, the post-conviction court found that counsel performed deficiently because he should have made a formal objection that the jurors "were no longer alert enough to both concentrate on the proof ... or alert enough to give proper consideration to the appropriate sentencing verdict." However, the court concluded that there was no prejudice because the jury deliberated for four hours and returned with a verdict of life without the possibility of parole, rather than death, despite the State's presentation of "graphic testimony in support of [its] one aggravating circumstance, that the murder was especially heinous, atrocious or cruel" and the petitioner's presentation of "limited mitigation regarding his family's affection for him and his work history."

> Initially, we disagree with the post-conviction court's conclusion that counsel preformed deficiently. The prosecutor testified that the trial court informed them that the jury "wanted to continue to work[.]" In addition, there was no evidence offered that the jury was no longer alert enough to concentrate on the proof and the deliberation process. The record shows that, on February 3, the jury communicated its wishes through the bailiff to not begin deliberations until the following morning; therefore, it is a reasonable inference that the jury would have likewise communicated its wishes on February 4 had it felt unalert enough to deliberate that evening.

> In any event, we agree that the record supports the post-conviction court's determination regarding the petitioner's failure to show prejudice. As noted above, the State presented "graphic testimony in support of [its] one aggravating circumstance, that the murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death."

In response, the petitioner presented "limited mitigation regarding his family's affection for him and his work history." Despite what appeared to be heavy proof in favor of the death penalty, the jury deliberated for four hours and imposed a lesser sentence. We cannot conclude that, but for counsel's failure to object at trial and raise the issue on appeal, the outcome would have been different.

*Banks v. State*, 2012 WL 1067201, at *10-11.

Banks has not established that the TCCA's decision was an unreasonable application of *Strickland* or that it was based on an objectively unreasonable factual finding. Notably, Banks has pointed to no evidence in the record that the jury was not sufficiently alert to deliberate after the penalty phase hearing. It would be sheer speculation to conclude that, if only the jury had stopped at an earlier hour and resumed their deliberations the next morning, there is a reasonable probability that the jury would have declined to sentence Banks to life imprisonment without the possibility of parole. This sub-claim is without merit.

### 4. Counsel's Failure to Review the Written Jury Instructions

Banks complains that his attorney failed "to review the jury instructions after the court made [] delineations and additions and challenge the form of the jury instructions in the motion for new trial." *See supra* p. 28. Banks raised this sub-claim in his brief to the TCCA on the post-conviction appeal. (Br. of Appellant 2, 29, 35-36, ECF No. 19-29.) The TCCA denied relief, reasoning as follows:

As to this issue, the post-conviction court found that counsel made a reasonable assumption that the suggested changes, additions, and corrections would be made in typewritten form, given that was the normal practice followed by the criminal court judges and their discussion took place "long before the charge was read to the jury." Accordingly, the court concluded that counsel was not deficient for failing to anticipate that the instructions would be given to the jury with the handwritten interlineations. However, the court found that counsel did perform deficiently in failing to review the instructions prior to filing the motion for new trial and raise the issue in such motion. In any event, the court found that the petitioner was not

prejudiced by counsel's inaction as it already concluded earlier that the instructions "f[e]ll more closely in line with those cases in which the appellate courts have determined no reversible error occurred[.]"

We conclude that the record supports the post-conviction court's conclusion that counsel did not perform deficiently in failing to review the charge after changes were made and prior to them being submitted to the jury. Counsel had a copy of the instructions, had objected to certain instructions, and the court had ample time to make the corrections in typewritten form as was normal practice amongst the criminal court judges. As such, we cannot agree with the post-conviction court's conclusion that counsel's conduct fell below an objective standard of reasonableness in thereafter failing to review the instructions prior to the motion for new trial when counsel had been present to hear the instructions read, as corrected, to the jury and would have, therefore, had no reason to anticipate that the instructions were not given to the jury in clean form.

In addition, the record supports the post-conviction court's conclusion that the petitioner was not prejudiced by any deficiency. As thoroughly addressed earlier, the judge's handwritten instructions were legible and correct and accurate statements of the law. The instructions were read, as corrected, to the jury prior to deliberations. Therefore, the jurors would have heard the correct instruction prior to reading the copy provided to them. In addition, the court did instruct the jury that interlineations had been made to the charge. Accordingly, the petitioner has failed to prove that he was prejudiced by counsel's failure to review the instructions before they were read to the jury and raise the issue in the motion for new trial.

*Banks v. State*, 2012 WL 1067201, at *11-12.

Once again, the TCCA's conclusions are not an unreasonable application of *Strickland* and were not based on objectively unreasonable factual findings. The form in which the written instructions were submitted to the jury was not consistent with the practice of judges in the Shelby County Criminal Court. Given the reasonable assumption that the corrections would be typewritten, and the fact that the instructions were read to the jury prior to their deliberations, the TCCA reasonably concluded that trial counsel was not deficient in failing to examine the written instructions prior to their submission to the jury or prior to the filing of the motion for a new trial. Moreover, as previously discussed, *see supra* pp. 23-24, the TCCA held that the instructions were

legible and an accurate statement of the law.   There is no basis to find that the jury did not follow the instructions.   Given the TCCA's decision upholding the jury instructions, *Banks v. State*, 2012 WL 1067201, at *7-8, Banks cannot establish prejudice.   This sub-claim is without merit.

### 5. Counsel's Failure to Object to the Prosecutor's Improper Statements During Closing Arguments

Banks claims that his attorney rendered ineffective assistance by failing to object to improper statements by the prosecutor during closing argument.   *See supra* p. 28.   Banks raised this issue in his brief to the TCCA on the post-conviction appeal.   (Br. of Appellant 2, 30-31, ECF No. 19-29.)   The TCCA denied relief on the merits, reasoning as follows:

> As noted by the post-conviction court, "[the] petitioner has given the court no guidance, by way of reference to the trial record, as to when in the trial the alleged misconduct occurred or which specific statements of the prosecutor were objectionable."   The post-conviction court reviewed the entire record and surmised which remarks by the prosecutor might possibly apply to the petitioner's allegations.   On appeal, the petitioner again does not pinpoint which remarks by the prosecutor were improper.   Instead, he only points to the prosecutor's remark in closing argument that the postconviction court surmised he was challenging: when the prosecutor asked the jurors to view the case from the victim's perspective.

> We conclude that, any possible deficiency notwithstanding, the petitioner has failed to prove how he was prejudiced by counsel's failure to object to the prosecutor's statement.   In fact, the petitioner failed to provide any argument at all concerning how he was prejudiced.   As found by the post-conviction court, this court concluded on appeal that there was sufficient evidence to support the petitioner's conviction for first degree murder and that "a rational jury could conclude that the duct tape, as applied to this victim, was 'done so willfully, deliberately, and intentionally to cause the victim's suffocation and death.'"

> The court noted that the petitioner confessed to being involved in the kidnapping and death of the victim, admitted to having detailed discussions with others concerning the plan to kidnap the victim, and left the victim gagged and bound in rural Mississippi.   The post-conviction court concluded that the result of the proceeding would not have been different had counsel objected to the prosecutor's statement in closing argument.   The record supports this determination.   The petitioner has failed to allege, and we fail to see, any

possibility that the result of the trial would have been different had counsel objected to the prosecutor's statement.

*Banks v. State*, 2012 WL 1067201, at *12-13.

The Warden argues that the TCCA's decision "was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented in trial court . . . ."  (Answer 30-31, ECF No. 77.)[15]  Because Banks has not specified the remarks that he contends were improper, the Court is unable to conclude that trial counsel performed deficiently by failing to object to them.  The Court also cannot conclude that, if only trial counsel had objected, there is a reasonable probability that the outcome of the trial or sentencing hearing would have been different.   As the TCCA noted, Banks confessed to his involvement in the home invasion, kidnapping, and murder.   This sub-claim is without merit.

> ### 6.     Counsel's Failure to Object to the Jury Instructions on Lesser-Included Offenses

Banks complains that his attorney failed "to challenge the trial court's failure to properly charge certain lessor-included offenses and raise the issue on appeal."   *See supra* p. 28.   Banks raised the issue in his brief to the TCCA on the post-conviction appeal.   (Br. of Appellant 2, 31-35, ECF No. 19-29.)   The TCCA denied relief on the merits for the following reasons:

> In ruling on this issue, the post-conviction court reviewed the law concerning lesser included [sic] offenses and noted that the trial court had charged the jury with "intermediate" or "buffer" offenses between the charge the petitioner asserts should have been given and the charge of which he was convicted. Therefore, the post-conviction court concluded that there was no prejudice in this

---

[15]   The TCCA held, as an initial matter, that this sub-claim had been waived, meaning that it has not been fairly presented to the state courts.   Because Respondent has not raised the affirmative defense of procedural default, the Court will address the merits.

case in light of the "posture of the appellate courts regarding the harmlessness of a trial court's failure to charge certain 'buffer' offenses[.]"

With regard to counsel's failure to pursue in the motion for new trial and on appeal the trial court's not charging any lesser-included offenses of felony murder, the postconviction court found that counsel did not perform deficiently in not raising the issue in the motion for new trial because the supreme court decision in *State v. Ely*, 48 S.W.3d 710 (Tenn. 2001), addressing the lesser-included offenses of felony murder, was not released until almost a year after the motion for new trial was filed. However, the post-conviction court found that counsel performed deficiently in failing to raise the issue on appeal because the oral arguments in the petitioner's appeal did not take place for two years after the release of the *Ely* decision. In any event, the post-conviction court found that there was no prejudice because the jury had rejected the intermediate lesser-included offenses of premeditated murder, the petitioner's premeditated murder and felony murder convictions had been merged, and this court on appeal determined that the evidence was sufficient to support both convictions. . . .

After review, we conclude that the record supports the post-conviction court's determinations. . . .Based on the fact that the jury found the petitioner guilty of the greater offense and rejected the intermediate lesser-included offenses, any deficiency on counsel's part was harmless and precludes the petitioner from establishing prejudice. *See State v. Banks*, 271 S.W.3d 90, 126 (Tenn. 2008); *State v. Allen*, 69 S.W.3d 181, 189 (Tenn. 2002); *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998).

Moreover, the record supports the post-conviction court's analysis of counsel's failure to pursue as an issue in the motion for new trial and appeal the trial court's not charging lesser-included offenses of felony murder. We cannot conclude that counsel performed deficiently in failing to raise the issue in the motion for new trial because the relevant supreme court decision addressing the lesser-included offenses of felony murder was not released until almost a year after the motion for new trial was filed. In addition, we need not address whether counsel performed deficiently in failing to raise the issue on appeal, because the petitioner has failed to prove any prejudice caused by counsel's inaction. . . .

*Banks v. State*, 2012 WL 1067201, at *13-14.

The Warden contends that Banks has failed to address the TCCA's opinion and has made no argument that the opinion is an unreasonable application of *Strickland v. Washington* or is based on an objectively unreasonable factual finding. (Answer 33, ECF No. 77.) The Court

agrees. Banks suffered no prejudice from the failure to instruct on lesser-included offenses because the jury never got to that stage of the process. As previously stated, *see supra* p. 21, the jury was instructed first to consider whether Banks was guilty of the charged offenses. The jury was to consider lesser-included offenses only after it had acquitted Banks of the charged offense. Because the jury did not acquit Banks of first-degree murder or of felony murder, it never had occasion to address any lesser-included offenses.

Even if Banks were correct that the jury charge should have included the lesser-included offenses to felony murder, he suffered no prejudice. Assuming that the jury had been properly charged and had had concluded that Dorothy Webber's murder was not in perpetration of the especially aggravated kidnapping, Banks was also found guilty of the premeditated murder of Mrs. Webber. Banks would still have had a capital sentencing phase hearing and still could have been sentenced to death or life imprisonment without the possibility of parole. *See State v. Ely*, 48 S.W.3d 710, 721 (Tenn. 2001) ("Under our statutory scheme, one who commits felony murder is held to the same level of culpability as one who commits premeditated murder. Both are subject to punishment by death, life in prison without parole, or life imprisonment with parole.").

Moreover, as the TCCA has pointed out, at the time of Banks's trial, Tennessee law did not recognize any lesser-included offenses to felony murder. *See id.* at 716-17 (explaining the State's position that there are no lesser-included offenses to felony murder because felony murder requires no culpable mental state). In *Ely*, which was decided sixteen months after Banks's trial, the Tennessee Supreme Court held that facilitation of felony murder is a lesser-included offense of felony murder. *Id.* at 720. In addition, second degree murder, reckless homicide, and criminally negligent homicide were also held to be lesser-included offenses of felony murder. *Id.* at 721-22.

An attorney does not render ineffective assistance by failing to anticipate future developments in the law. *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999); *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) ("nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"); *Hall v. Bell*, No. 2:06-CV-56, 2010 WL 908933, at \*25 (E.D. Tenn. Mar. 12, 2010) ("An attorney's failure to anticipate later legal developments generally does not amount to ineffective assistance.").

This sub-claim is without merit.

### 7. Counsel's Failure to Object to the "Moral Certainty" Portion of the Jury Instructions

Banks complains that his attorney failed to challenge the "moral certainty" language in the jury instructions. *See supra* p. 28. Banks raised this issue in his brief to the TCCA on the post-conviction appeal. (Br. of Appellant 2, 36, ECF No. 19-29.) The TCCA denied relief on the merits, reasoning as follows:

> The petitioner cites to *State v. Rimmer*, 250 S.W.3d 12 (Tenn. 2008), a case released well after his trial and appeal, but does not support his claim with any argument and has therefore waived review of this issue. *See* Tenn. Ct. Crim. App. R. 10(b).

> In any event, the post-conviction court, citing *Rimmer*, *State v. Dellinger*, 79 S.W.3d 458 (Tenn. 2002), and *State v. Bush*, 942 S.W.2d 489 (Tenn. 1997), noted that, "[a]lthough such language has been discouraged, numerous appellate courts have approved the pattern charge." Therefore, the court found that counsel was not ineffective in [not] either to the charge or raising a challenge to it in the motion for new trial.

> We agree with the post-conviction court's determination. Although the "moral certainty" language has been discouraged, the courts have concluded that the jury instruction did not result in the denial of due process. *See Rimmer*, 250 S.W.3d at 31; *Dellinger*, 79 S.W.3d at 501-02; *Bush*, 942 S.W.2d at 520-21. Therefore, the petitioner has failed to show that counsel was deficient for not objecting to the charge or any resulting prejudice.

41

*Banks v. State*, 2012 WL 1067201, at *14-15.

The TCCA's decision "was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented . . . ." (Answer 33, ECF No. 77.)[16] This Court has held that the "moral certainty" jury instruction was not unconstitutional. *See supra* pp. 22-24. As the TCCA noted, the case on which Banks relied in his appellate brief was decided in 2008, eight years after his trial. An attorney does not render ineffective assistance by failing to anticipate the future course of the law. *See supra* p. 41. Banks has not satisfied his burden of demonstrating that the TCCA's conclusions that he failed to show either deficient performance or prejudice were an unreasonable application of *Strickland* or were based on an objectively unreasonable factual finding. This sub-claim is meritless.

### 8.    Counsel's Alleged Failure to Investigate

Banks claims that, "had trial counsel investigated the facts and circumstances of his case in relation to the law, both factually and legally, then the petitioner's trial would not (have) (sic) resulted in the manner of the petitioner being convicted of both premeditated murder and felony murder." *See supra* p. 28. The Warden argues, as an initial matter, that this claim is procedurally barred because it was not presented in a post-conviction petition. (Answer 33-34, ECF No. 77.) Unfortunately, Perry failed to cite to the specific page within the record which supports this proposition, instead merely citing to a large document. Moreover, Banks's original

---

[16] Like sub-claim 5, Banks may not have properly exhausted this claim in state court, leading the TCCA to hold that it was waived. However, the Warden did not raise the affirmative defense of procedural default.

post-conviction petition leads with numerous claims that defense counsel failed to conduct an adequate investigation. (1st Post-Conviction Relief Pet., ECF No. 19-22 at PageID 1854-57.) Although it is conceivable that those claims were abandoned in the trial court or not pursued on appeal, Perry has failed to develop this affirmative defense.

Next, Perry argues that Banks's presentation of this sub-claim fails to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules"), which requires that a habeas petition must "(1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground . . . ." (*See* Answer 34, ECF No. 77.) Notice pleading is not permitted in habeas litigation. *Blackledge v. Allison*, 431 U.S. 63, 75-76 (1977) (noting that more than notice pleading is required in habeas petitions); *Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil Procedure] by requiring some fact pleading"); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) ("There is here no substantial allegation or new dispute of fact that would entitle appellant to a full evidentiary hearing, as petitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof; and his motion is, thus, legally insufficient to sustain a review.").

Here, Banks fails to specify what his attorney would have discovered if only he had undertaken a more thorough investigation and fails to argue that he was prejudiced by the deficient investigation. This sub-claim is without merit.

* * * *

Because every claim asserted by Petitioner is without merit, the Court **DENIES** the § 2254 Petition. The § 2254 Petition is **DISMISSED WITH PREJUDICE**. Judgment shall be entered for Respondent.

## V.    APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, § 2254 Rules. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that the § 2254 Petition is meritless for the reasons previously stated.  Because any appeal by Petitioner on the issues raised in his § 2254 Petition does not deserve attention, the Court **DENIES** a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).  In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**.[17]

**IT IS SO ORDERED**, this 30th day of September, 2016.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE

---

[17] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order.  *See* Fed. R. App. P. 24(a)(5).